Good morning, all. Our first case for submission this morning is Chicago Board of Options Exchange v. SEC. Mr. Greenwalt. Good morning, Your Honor. My name is Paul Greenwalt and I'm appearing today on behalf of the CBOE Exchange. As this panel knows, this appeal does not present a new question for this Court. In 2015, this Court, indeed this panel, held that the SEC has jurisdiction arising under Section 19H1 of the Securities Exchange Act of 1934 to determine whether the defendant exchanges violated their payment for order flow rules. The statutory grant of jurisdiction provides the SEC with discretion to decide whether it wants to institute proceedings to consider whether an exchange has violated its rules. In particular, Section 19H authorizes the SEC to act and impose sanctions if, in the SEC's opinion, such action is necessary or appropriate in the public interest. Thus, the SEC is not required to act whenever it receives an allegation that an exchange is violating its rules. However, it clearly has the statutory jurisdiction to determine that issue. In its brief, the SEC now agrees that it always has jurisdiction to consider whether an exchange has violated its rules. As you saw in the briefing, there was some issue about whether the SEC was arguing whether its jurisdiction sprang into existence when it decided to exercise its discretion. The SEC has now taken the position that it always has jurisdiction. And that concession is dispositive of this appeal, and it is consistent with this Court's ruling from three years ago. Moreover, the SEC's jurisdiction over issues about whether self-regulatory organizations, meaning exchanges, have violated their rules is exclusive. The Exchange Act confers jurisdiction over those issues only to the SEC. And given the SEC's power over self-regulatory organization rules, where it decides whether they'll become effective, where the SEC can abrogate those rules, and the SEC's expertise in how those rules should be applied, it made sense that Congress wanted the SEC to have exclusive jurisdiction over those issues. Giving exclusive jurisdiction to the SEC also furthered the Congressional goal of uniformity. Congress did not want different courts around the country, federal courts or state courts, to rule on whether SROs had violated their rules and what their regulatory and rule obligations would be. I'd like to respond briefly to two of the arguments that were made by the SEC and the market makers. First, contrary to their arguments, there is no basis to apply Chevron deference in this case. There simply is no ambiguity in Section 19H1 that would require deference to the SEC's conclusion that it lacked jurisdiction to decide whether the exchanges had violated their rules. In its earlier opinion, this panel held that the plain language of Section 19H gives the SEC jurisdiction to rule on those issues. And although the SEC cites to Chevron in its brief several times, it never points to any alleged ambiguity in the statutory language. That fact is determinative. In the absence of an ambiguity, this case is a Chevron step one case, so to speak. And because the statutory language is clear, there is no basis to afford any deference to an interpretation by the SEC. Second, the SEC reframes the issue that's really before this court and argues it does not have jurisdiction over every issue that might arise in the market maker's civil action. We agree with that position. We do not argue that the SEC has jurisdiction to supplant the district court or that it has jurisdiction over every issue that the market makers might raise or that the exchanges might raise in the civil action. But the SEC does have jurisdiction over the threshold issue. The SEC's jurisdiction is present to determine whether exchanges have violated their rules. And if it finds a rules violation, the SEC has sanctioning authority over the exchanges. And that issue is a threshold issue, which made it perfectly appropriate for the district court to send the case to the SEC so that the SEC had an opportunity to consider the issue. In conclusion, because this court correctly held in 2015 that the SEC has jurisdiction to decide whether a self-regulatory organization like the defendant exchanges in this case had violated its rules and because the SEC's subsequent order is not consistent with that decision, we respectfully request that the court grant our petition and set aside the SEC's order. I'm happy to entertain any questions from the panel. We'd be happy to ask them too. Thank you. Thank you, Mr. Greenlaw. Mr. Cox. Good morning. I may have pleased the court. Doug Cox for NASDAQ, the intervening petitioner. My colleague said the issue before the court today is simple. We want the court to order the SEC to do what the court directed it to do the last time. I'll make just two brief points, Your Honor. First, it's clear that the SEC, in the opinion that is before you today, denied that it had jurisdiction. It did not say we're exercising discretion. It said we don't have jurisdiction. Secondly, Your Honor, as my colleague points out, in the briefing before this court, the SEC has tried to smooth, if you will, some of the rough edges of the SEC's actual opinion, but under the Chenery Doctrine, that won't work. They have to defend the SEC's opinion as written, and that opinion directly contradicts what this court said. Thank you, Your Honor. Thank you, Mr. Cox. Mr. Totaro. May it please the court. Martin Totaro on behalf of the Securities and Exchange Commission. This case presents one distinct issue, whether the commission erred when it concluded that it did not have jurisdiction over the market maker's petition. The text of Exchange Act, Section 19H1, resolves that issue. Through that provision, Congress authorized the commission to sanction exchanges for rule violations when the commission determined that doing so would serve the public interest. What the provision does not do is grant the commission jurisdiction over allegations by a private party, sounding in contract and restitution, that an exchange violated its own rules. Who does have jurisdiction over the private rules that they set for themselves? Your Honor, the commission always has jurisdiction under 19H1, as the exchanges note, but that's in its regulatory capacity. We take no position on whether a state or federal court would have jurisdiction of the market maker's private claims. As best I understand the exchange's position, it's essentially a field preemption argument dressed up in jurisdictional clothes. Because the commission regulates the exchanges and may initiate disciplinary proceedings, the exchanges seem to be urging that any private lawsuit related to potential rule violations falls under the commission's jurisdiction, even if the commission has not instituted proceedings in its regulatory capacity, and even if the lawsuit raises contract and restitution claims, the commission does not resolve. But nothing in Exchange Act, Section 19H1, extends the commission's jurisdiction to those circumstances. And a court, whether it be state or federal, not an agency, traditionally decides preemption issues. If the exchange's claims are preempted or are meritless, then a court will still hold at, for example, the Rule 12b6 stage. But this court should not approve the exchange's attempt to prematurely terminate this litigation. The exchanges, in essence, frame this case in terms of channeling. The channeling inquiry asks whether it is fairly discernible from the statute that Congress intended the plaintiffs to proceed exclusively through the statutory review scheme. But the critical point in channeling is that the plaintiffs and their claims are channeled to an administrative forum. But here, the exchanges want to leave the plaintiffs behind because now they acknowledge that the commission, quote, and this is from SIBO's brief on page 17, is the only party that can bring a proceeding alleging a national exchange rule violation. But that's not how channeling works. To the contrary, as the Supreme Court explained in the Finley decision we cite in the brief, a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties. The exchanges approach, which I want to make clear is unprecedented, would flip that basic principle on its head. I am aware of no case in which a court has ruled that certain claims must be channeled through an agency even if the plaintiffs are not proper parties to the proceedings. And while in our brief we made very clear that we took no position on the merits of the market maker's claims, I would note that several of the cases cited by the exchanges on the merits do inform the jurisdictional question. So Series 7 from the D.C. Circuit, Sparta Surgical from the Ninth Circuit, MM&S, and the recent City of Providence decision from the Second Circuit were all decided at the 12B6 stage by a district court, not the commission, and all involve at their core alleged rules violations. A contrary decision by this court would at a minimum be in tension with those decisions. And if I could, I would also like to speak on the practical implications of the exchanges' position. The exchanges are asking this court to create a whole new category of extra statutory litigation. But frankly, the commission does not have procedures for this new category of litigation. So we'd have to develop a system, probably through the promulgation of rules, through notice and comment, addressing these sorts of claims. We'd have to address issues like, what is the time limit to file a petition? What would a petition look like? What are the page limits for the petition? Would the proceedings be stayed while the commission is examining the petition? What would briefing look like? So these are all sorts of complicated issues that would have to be resolved if the exchanges' position is correct. And I'd also like to note that the position taken by the exchanges could lead to further potentially staggering consequences. In the past decade, the commission has created what's called a TCR review system, tips, complaints, and referrals. That allows the public to inform the commission through a particular process of potential rules violations or statutory violations. Now, page 11 of NASDAQ's brief and page 9 of NASDAQ's reply brief suggests that there could be federal appellate review of the commission's denial to exercise enforcement discretion. I'd like to make clear that there are over 16,000 tips, complaints, and reviews filed with the commission a year. 16,000 what? 16,500 tips, complaints, or referrals. Tips. Filed with the commission. Under the exchanges' view, it would potentially be the commission's obligation to issue a decision deciding whether to initiate enforcement proceedings on those tips, complaints, or referrals that raise enforcement discretion issues. And I would also note, under the exchanges' view, the floodgates would open not only for the commission, but also for federal courts of appeals like this one, because under the exchanges' view, there would be federal appellate review under Section 25A1 of the Exchange Act. In terms of Chenery, I don't believe there is any daylight between the position the commission is taking now on appeal and the position in the order. As we do on appeal and as we did in the order, we distinguish this panel's prior case because it involved exhaustion. The market maker's evidentiary burden to demonstrate that an exception to exhaustion was allowed, and that simply isn't at issue here. I'd also like to note that the exchanges, while they pull out particular clauses from this court's prior opinion and put them in their brief to show that this court clearly concluded that the commission had jurisdiction over the market maker's claims, read broadly, I think that would be wholly inconsistent with the rest of the court's decision talking about exhaustion and its exceptions, which would be wholly irrelevant if the commission were correct that this court clearly decided the statutory issue of the commission's jurisdiction. On page 28 of our brief, we cite the Rush University case. I think that's particularly instructive and might provide a roadmap for this court to affirm the commission's order. In that case, the issue was whether pure research costs are compensable under the Medicare Act. A panel decision of this court said those costs are compensable, and it made that decision on, quote, the plain language of the statute, which is also the language this court used in its prior decision. Now, the Department of Health and Human Services then said, no, those costs aren't compensable, and in Rush University, the court concluded that it should defer to the agency's position. And I think on page 759 of that opinion, there's a key quote that could be relevant here. It says, a quote here and a quote there are ultimately less important than the core holding of the case. And unless there are any questions, my final point would be that I suspect it is not very often that a commission or an agency attorney comes before you and says the commission doesn't have jurisdiction. To the contrary, I think some courts and some commentators have accused agencies of jurisdictional overreach. This is precisely the opposite scenario. And the commission presented that scenario and why it was true in a carefully constructed opinion that we asked the court to affirm on appeal. I'm happy to answer any questions, but unless the judges have nothing else, I ask that the order be affirmed. Thank you, Mr. Fowler. Mr. Bedell? Good morning, Your Honors. If they please the court, my name is Stephen Bedell, and I represent the intervening respondents. And I have just two points I'd like to make this morning in the very brief time allotted to me. First, in their efforts to persuade this court that the commission has the sole authorization to prosecute or adjudicate the issues raised in this case, the exchanges continually misdescribe our causes of action as, quote, claims against the exchanges for the violation of their own rules, thereby suggesting that our claims are somehow derivative of the 34 Act. The exchanges go on to argue that the 34 Act has no private right of action, and as a result it is the commission's sole province to pursue these matters. However, all of our causes of action are state law, common law claims. And as recently as two years ago in the Manning decision, the U.S. Supreme Court ruled that even where the allegations of a complaint may in fact support a federal claim, the plaintiff may nevertheless choose to pursue state common law claims even in state court. Furthermore, six years ago in a similar case, this court in Wygod ruled that even where the relevant federal statute does not provide a private right of action, nevertheless a plaintiff may pursue a cause of action under state common law even where the facts that that claim is based on are the same facts that may support a claim under the statute. The exchanges have no answer to those two holdings. My second point, and I think for my clients the most critical point, and perhaps the most critical point in this entire case, is the following. Everyone in this case concedes that the commission does not have authorization to award damages or make my clients or any victims of the commercial misdeeds of the exchanges whole. By arguing that my clients should not be allowed to vindicate their rights in either state or federal court, but rather should be shunted to a forum that cannot award damages and cannot make my clients whole or cannot make whole the victims of any commercial misdeeds by the exchanges. The exchanges are asking for something unique in American jurisprudence because if they can persuade this court that the victims of commercial misdeeds by the exchanges can only pursue their complaints in a forum that by definition cannot award them damages or make them whole, then that will be, for all practical purposes, absolute immunity for their commercial wrongdoing. And that would fly in the face of generations of federal precedent which restrict immunity for the exchanges to only purely regulatory conduct. But the exchanges use the language of exhaustion and they use the language of preemption, but the ultimate result of where they wish to lead this court is to absolute immunity cloaking all of their commercial activities in immunity, and for that reason alone, their claims should be rejected. Thank you. Thank you, Mr. Fidel. Mr. Greenwald. Thank you, Your Honor. Just a few brief response points. When Mr. Totaro was talking about field preemption, he again framed the issue incorrectly. This case is not about whether the SEC has jurisdiction over all of the market maker's claims or the entire civil action. This case is about the issue of whether or not the SEC has jurisdiction over the issue as to whether or not SROs, including the defendant exchanges in this case, have violated their rules. Mr. Totaro also spoke about the tips, complaints, and referrals hotline, and I think that's an important point. The petition, at its essence in this case, is simply a tip to the SEC. The market makers are saying we think the SECs have violated their rules and the SEC has jurisdiction to decide that issue. Again, we're not asking for a new category of litigation before the SEC. The procedure already exists. The SEC, once it receives the tip or the petition, can decide whether it wants to institute a disciplinary proceeding and explore whether the exchanges have violated their rules. We're not asking this court to create a cottage industry of litigation at the SEC level. Mr. Totaro also spoke about federal appellate review and whether it would be available. That issue is really not before this court. The sole issue before this court is whether or not the SEC has jurisdiction. Whether or not there is appellate review down the road really depends on what the SEC does, and there's no way to answer that question until the SEC recognizes its jurisdiction and makes a determination as to whether or not it wants to take action. What forum could you use to go over these problems that the SEC doesn't want to do? They talk about state courts, state suits. Well, it would depend on what the SEC did, and if the SEC issued an order that aggrieved a party, the market makers would be in no different situation than we are. Were a party aggrieved, we have a right to appeal to a court of appeals from that type of an order. Just briefly touching upon Mr. Bedell's comments, he tried to say again that their claims are not about violations of the exchange's rules. This court clearly in 2015 disagreed with that, and it said at page 699 of its opinion, we agree with the district court that plaintiffs seek to enforce, defend its own rules promulgated under the exchange. That issue has already been decided. In fact, the district court took another look at that issue when it denied the motion to remand of the third case filed by the market makers, and this is in the appendix at page 618, and it again said that the plaintiff's cause of actions all depend upon a finding that the exchanges have violated their rules. While he's trying to recharacterize his claims, at the core that's what their claims are about, and that's an issue that the SEC has exclusive jurisdiction over. Those were the only rebuttal comments I had. I'm happy to answer any questions. Otherwise, I thank you for your time. Thank you, Mr. Greenwald. Mr. Cox. Your Honor, I would simply say to avoid repetition that the court has already said in so many words that 19-H-1 covers the allegations here at page 700, and all we're asking is for the SEC to do what you thought you were telling them to do last time. They'll issue an order. The parties will then take that order forward. Thank you, Your Honor. Thank you, Mr. Cox. Thanks to all counsel, the case is taken under advisement.